# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP2146 |

| | |
|---|---|
| COMPLETE TITLE: | DEKK Property Development, LLC,<br>        Plaintiff-Respondent-Petitioner,<br>   v.<br>Wisconsin Department of Transportation,<br>        Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 400 Wis. 2d 548, 971 N.W.2d 201
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 18, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Kenosha |
|   JUDGE: | Anthony G. Milisauskas |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, DALLET and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Alan Marcuvitz, Andrea Roschke, Smitha Chintamaneni, Adam S. Bazelon,* and *von Briesen & Roper, S.C.,* Milwaukee. There was an oral argument by *Alan Marcuvitz.*

For the defendant-appellant, there was a brief filed by *Hannah S. Jurss,* assistant attorney general, with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Hannah S. Jurss,* assistant attorney general.

**2023 WI 30**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP2146
(L.C. No. 2019CV1226)

STATE OF WISCONSIN        :        IN SUPREME COURT

**DEKK Property Development, LLC,**

      **Plaintiff-Respondent-Petitioner,**

      **v.**

**Wisconsin Department of Transportation,**

      **Defendant-Appellant.**

**FILED**

**APR 18, 2023**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, DALLET and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a concurring opinion.

REVIEW of a decision of the Court of Appeals. *Modified, and as modified, affirmed.*

¶1 JILL J. KAROFSKY, J. This controversy stems from a driveway closure——specifically, the Wisconsin Department of Transportation's (DOT's) closure of a driveway connecting DEKK Property Development, LLC's (DEKK's) property to State Trunk Highway (STH) 50. DEKK is seeking compensation for the closure. The case potentially raises two questions: (1) whether DEKK may seek compensation for the driveway closure in a "right-to-take"

action under Wis. Stat. § 32.05(5)(2021-22),[1] and (2) if so, whether DOT must compensate DEKK for the closure.  We hold that DEKK may not bring its claim under § 32.05(5), and thus we do not reach the second question.  Section 32.05(5) provides a means to challenge DOT's right to take property described in a jurisdictional offer issued under § 32.05(3), and here DOT's jurisdictional offer to DEKK did not describe any removal of access to STH 50.  Therefore, the circuit court[2] should have granted DOT's summary judgment motion and dismissed DEKK's claim.  Because this procedural issue is dispositive, we do not decide the question of whether DEKK might be owed compensation had it challenged the driveway closure via a different avenue.

I.  BACKGROUND

¶2   DEKK owns approximately four acres of property (the Property) in Kenosha County near the southeast corner of STH 50 and County Highway (CTH) H.  The following is an aerial photo of the Property.[3]  STH 50 runs east-west along the top of the photo, and CTH H runs north-south on the left.  There is one driveway from the Property to STH 50, which DOT seeks to close, and one

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

[2] The Honorable Anthony G. Milisauskas of the Kenosha County Circuit Court presided.

[3] This aerial photo is from an appraisal report DOT commissioned before issuing an offer to purchase a portion of DEKK's property that abuts CTH H.  We have added labels for CTH H and STH 50 to aid the reader in understanding the layout of the Property.

driveway from the Property to CTH H, which will remain available for use.



¶3   In 1961, the former owners of a portion of the property deeded to Kenosha County (acting as an agent for DOT) "the Right of Access, including all existing, future, or potential common law . . . rights of access" to STH 50, along with a tract of land adjacent to STH 50.  This tract included the land on which the contested STH 50 driveway is located.  The deed included the following exception:

> Except there is reserved the right of access to said
> highway by means of one restricted driveway same to be

used only for barber shop purposes for the term of fifteen years from date of this conveyance and then to become a private driveway conforming to the regulations of the State Highway Commission. Said driveway is to be constructed with its eastern limits along the east line of the owner's property line in conformance with State Highway Commission policy.

There is little information on any subsequent use or development of the STH 50 driveway in the record.

¶4 In 2019, DOT sought to acquire another part of the Property——a strip of land abutting CTH H——as part of a project to improve STH 50. After DOT decided to acquire the CTH H parcel, it commissioned an appraisal of the parcel as required by Wis. Stat. § 32.05(2)(a). The appraisal report assessed the CTH H parcel, and explained that DOT was not seeking to acquire any access rights. The report noted that the driveway between the Property and STH 50 (located on a different part of the Property than the CTH H parcel) would have to be closed. It also noted that DOT would not compensate DEKK for the STH 50 driveway because the commercial building that the driveway formerly served had been demolished, and redevelopment of the property would "likely require new driveway approvals in an alternate location farther from the intersection."

¶5 After DOT provided the appraisal report to DEKK, DEKK emailed DOT to ask about the lack of compensation for the STH 50 driveway closure. A DOT real estate specialist explained that "at the time of acquisition the current driveway will still remain in place," and that any revocation of the access point would be "non-compensable now because it has not happened yet, and if it ever did, it would be through police power."

4

¶6 DOT then issued a jurisdictional offer to DEKK as required by Wis. Stat. § 32.05(3). In the jurisdictional offer, DOT offered to purchase the CTH H parcel for $272,100. It did not offer to purchase any access rights, allocate compensation for any loss of access rights, or reference any driveway closures. The jurisdictional offer included a Transportation Project Plat, which denoted the property interests DOT sought to acquire. We include the relevant portion of the Plat below:



The CTH H parcel is identified on the left side of the Property. Arrows point to the part of the parcel DOT sought to purchase in fee simple (indicated by diagonal lines), the part on which it sought a temporary limited easement (indicated by dots), and the part on which it sought a permanent limited easement (too small

to be visible on this Plat). DEKK does not challenge the purchase of the land or easements.

¶7 After DOT issued the jurisdictional offer, DEKK filed an action under Wis. Stat. § 32.05(5) in the Kenosha County Circuit Court. DEKK did not challenge the acquisition of the CTH H parcel, but instead challenged "DOT's right to remove DEKK's rights of access to STH 50." Both DOT and DEKK moved for summary judgment.

¶8 Shortly after the filing of the summary judgment motions, but before the circuit court's decision, DOT sent a letter to DEKK providing "official notice" that it "plan[ned] to remove the existing driveway from State Highway 50 . . . during an upcoming improvement project." The letter explained that under Wis. Admin. Code § Trans 231.03(2), the number of driveways serving a property along a state trunk highway shall be the "minimum" deemed necessary "for reasonable service to the property without the undue impairment of safety, convenience, and utility of the highway," and "[r]emoving unnecessary access points . . . increases the mobility of the highway facility while reducing the potential for crashes as vehicles enter and leave the highway." The letter further explained that DEKK could contest the removal by submitting an objection letter to DOT, and DOT would then send a "revocation letter" if either DEKK failed to respond to the notice or DOT upheld its revocation decision. Because DEKK initiated this challenge under Wis. Stat. § 32.05(5) prior to DOT sending the official notice, the record is unclear as to whether DEKK took advantage

6

of DOT's administrative review process, or whether DOT subsequently sent a revocation letter.

¶9 After receiving the notice, DEKK filed a motion for a temporary restraining order and injunction to prevent DOT from closing the driveway. The circuit court granted DEKK's motion for the injunction along with its motion for summary judgment, reasoning that DEKK had "some sort of right of access" to the driveway and thus deserved compensation for its closure. The court further determined that DEKK properly filed its claim under Wis. Stat. § 32.05(5). DOT appealed, and the court of appeals reversed, reasoning that the 1961 transaction only reserved the right to use the driveway subject to DOT regulations, and DOT was within its rights to close the driveway without compensation as an exercise of police power. Because the court of appeals held for DOT on the merits, it did not address DOT's alternative argument that § 32.05(5) was not the proper procedural mechanism for DEKK's claim. We granted DEKK's petition for review and now affirm the court of appeals on the alternative procedural grounds.

## II. STANDARD OF REVIEW

¶10 This case requires us to review the circuit court's decision to grant summary judgment for DEKK and deny summary judgment for DOT. Summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. McKee Fam. I, LLC v. City of Fitchburg, 2017 WI 34, ¶27, 374 Wis. 2d 487, 893 N.W.2d 12. We review summary judgment decisions independently. Id.

7

¶11 In determining whether either party is entitled to judgment as a matter of law, we must determine whether DEKK may bring its claim under Wis. Stat. § 32.05(5). To do so, we must interpret and apply the statute. Statutory interpretation presents a question of law that we review independently. 260 N. 12th St., LLC v. DOT, 2011 WI 103, ¶39, 338 Wis. 2d 34, 808 N.W.2d 372.

### III. ANALYSIS

¶12 We begin our analysis with a brief review of the relevant principles and procedures that apply when DOT seeks to acquire private property by eminent domain. We then turn to the different means by which property owners may challenge or seek compensation for DOT's actions. Finally, we examine whether in this case DEKK may bring its claim in a Wis. Stat. § 32.05(5) right-to-take action.

¶13 When DOT determines that it is necessary to take private property under its eminent domain authority, it must pay just compensation. U.S. Const. amend. V. ("nor shall private property be taken for public use, without just compensation."); Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor."). But not all state actions that affect private property result in a compensable taking. 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶32, 359 Wis. 2d 30, 856 N.W.2d 486. Injuries to property that result from a valid exercise of the state's police power are generally not compensable. Nick v. State Highway Comm'n, 13

Wis. 2d 511, 514, 109 N.W.2d 71 (1961). Compensable eminent domain and non-compensable police power actions "can occur contemporaneously," and DOT may exercise both its police power and its eminent domain authority as part of the same highway construction project. 118th St. Kenosha, LLC, 359 Wis. 2d 30, ¶¶31-33.

¶14 When DOT exercises its eminent domain authority to obtain private land for transportation projects, it must follow the procedures set forth in Wis. Stat. § 32.05. Under that statute, once DOT determines that it must acquire a piece of property, it is required to seek an appraisal of the property, provide the owner a copy of the appraisal report, and confer with the owner, if reasonably possible. Wis. Stat. § 32.05(2)(a). DOT must then attempt to negotiate with the owner for the property. § 32.05(2a). If negotiations are unsuccessful, DOT issues a jurisdictional offer to purchase the property. The jurisdictional offer describes the property and the compensation being offered (among other requirements). § 32.05(3). If the property owner rejects the offer, the owner may file a "right-to-take" action under § 32.05(5) to contest DOT's right to take the property "described in the jurisdictional offer." § 32.05(5).

¶15 Wisconsin Stat. § 32.05(5) is just one of several statutes that enable property owners to challenge DOT when DOT undertakes highway construction projects affecting private

property.[4]  See TFJ Nominee Tr. v. DOT, 2001 WI App 116, ¶¶25-26, 244 Wis. 2d 242, 629 N.W.2d 57.  The appropriate statute depends on the facts of the case and the nature of the challenged governmental action.  These statutes are not interchangeable, and "even if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute." 118th St. Kenosha, LLC, 359 Wis. 2d 30, ¶33.

¶16  Moreover, even when DOT undertakes different projects that are part of the same overall highway construction project, "that does not necessarily merge each project into one single compensable act."  Id.  Importantly here, different projects are not necessarily merged into a single compensable act even when the projects affect the same property owner, or occur around the same time.  For instance, in 118th Street Kenosha v. DOT, DOT undertook two separate actions as part of the same highway improvement project: (1) relocating a highway, which eliminated the property owner's direct access to the highway, and (2)

_____

[4] For instance, if an owner believes that DOT took a property right, but failed to properly condemn the property by following the procedures set out in Wis. Stat. § 32.05, the owner may file an action for inverse condemnation under Wis. Stat. § 32.10.  See TFJ Nominee Tr. v. DOT, 2001 WI App 116, ¶25, 244 Wis. 2d 242, 629 N.W.2d 57.  Additionally, if DOT revokes a permit for a driveway to a state trunk highway, the owner may challenge DOT's revocation under the procedures set out in Wis. Stat. § 86.073, which include the right to appeal DOT's final determination under the administrative review procedures set out in Wis. Stat. ch. 227.  Wis. Stat. § 86.073(3); Wis. Stat. § 227.43(1)(bg).

acquiring a temporary limited easement from the owner in order to build a driveway to a private road that intersected with the highway. Id., ¶2. The property owner sought damages under Wis. Stat. § 32.09(6g) for the diminution in value to its property caused by the relocation of the highway. We held that the owner could not do so under § 32.09(6g) because § 32.09(6g) provided a means to seek damages resulting from the taking of an easement, and the damages sought by the owner did not result from the easement. Id., ¶57.

¶17 Taking these principles together, we must determine whether DEKK may seek damages under Wis. Stat. § 32.05(5) for DOT's closure of the STH 50 driveway. The statute reads in pertinent part as follows:

> If an owner decides to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may within 40 days from the date of personal service of the jurisdictional offer . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant. Such action shall be the only manner in which any issue other than the amount of just compensation . . . may be raised pertaining to the condemnation of the property described in the jurisdictional offer . . . . Nothing in this section shall be construed to limit in any respect the right to determine the necessity of taking as conferred by s. 32.07 nor to prevent the condemnor from proceeding with condemnation during the pendency of the action to contest the right to condemn.

Wis. Stat. § 32.05(5).

¶18 Section 32.05(5) sets out a process by which DEKK may "contest the right of the condemnor," here, DOT, "to condemn the

11

property described in the jurisdictional offer." Actions under § 32.05(5) are limited to issues "pertaining to the condemnation of the property described in the jurisdictional offer." Wis. Stat. § 32.05(5); see Warehouse II, LLC v. DOT, 2006 WI 62, ¶24, 291 Wis. 2d 80, 715 N.W.2d 213 (explaining that § 32.05(5) permits owners to challenge the government's right to condemn the property described in the jurisdictional offer). Put simply, if DEKK's access to STH 50 is "described in the jurisdictional offer," then § 32.05(5) would be the proper procedural mechanism by which DEKK could bring its claim. If not, then DEKK may not recover damages under that statute, and its action should be dismissed. See 118th St. Kenosha, LLC, 359 Wis. 2d 30, ¶33.

¶19 We therefore turn to DOT's jurisdictional offer to determine whether it describes any such access right. The jurisdictional offer states that DOT "offers to purchase a parcel of real estate and/or rights therein in which [DEKK] own[s] an interest as described on attached page, and within 60 days from the acceptance of this offer agrees to pay the sum of: Two Hundred Seventy-Two Thousand One Hundred and 0/100 Dollars (272,100.00)." The attached page provides a legal description of the CTH H parcel. The parcel described does not touch the STH 50 driveway that is in dispute here. While the parcel described does include the CTH H driveway, both DEKK and DOT agree that DEKK retains access to CTH H via that driveway. The parcel description also incorporates by reference "[a]ny interest or rights not listed above for said parcel but shown as

12

required on [Transportation Project Plat 1310-10-22]." Of import here, the referenced Plat does not indicate that DOT was seeking to remove any STH 50 access rights.[5] The Plat only highlights the fee simple, permanent limited easement, and temporary limited easement that DOT sought to acquire, none of which connect to the STH 50 driveway.

¶20 The rest of the jurisdictional offer similarly does not describe the removal of any STH 50 access rights——instead, it relates only to the taking of the CTH H parcel. The offer allocates the bulk of its purchase price to "[l]oss of land, including improvements and fixtures actually being acquired," and the rest to rounding and the easements DOT sought on the CTH H parcel. The offer allocates zero dollars to "Damages caused by loss of existing rights of access," and it does not otherwise mention any access rights.

¶21 If DEKK sought to challenge DOT's right to take the CTH H parcel, Wis. Stat. § 32.05(5) would be the appropriate means to do so. However, § 32.05(5) is not the appropriate means for determining the nature of DEKK's access rights to STH 50, whether those rights are being impeded, or whether any such impediment is compensable. See TFJ Nominee Tr., 244 Wis. 2d 242, ¶2. Because the jurisdictional offer does not describe the

---

[5] The referenced Plat does show that DOT restricted access to STH 50 in a 2003 project, but it does not indicate that DOT is taking any access rights as part of the current project.

13

STH 50 driveway closure or any loss of access rights, DEKK may not challenge the closure under § 32.05(5).

¶22 DEKK's arguments to the contrary are unavailing. DEKK relies primarily on Waller v. American Transmission Company, in which we held that property owners could raise an uneconomic remnant claim in a Wis. Stat. § 32.06(5)[6] proceeding. 2013 WI 77, ¶118, 350 Wis. 2d 242, 833 N.W.2d 764. But DEKK is not raising an uneconomic remnant claim——that is, it does not argue that the taking of the CTH H parcel leaves its remaining property in "such size, shape or condition as to be of little value or of substantially impaired economic viability." See Wis. Stat. § 32.05(3m) (defining "uneconomic remnant"). Waller does not stand for the broad proposition that a property owner may challenge any DOT action under § 32.05(5). This proposed expansion of Waller would run contrary to the plain language of § 32.05(5), which is limited to issues "pertaining to the condemnation of the property described in the jurisdictional offer" (emphasis added). Here, DEKK does not challenge the taking of the CTH H parcel described in the jurisdictional offer, or allege that the taking left it with an uneconomic remnant, but instead challenges the closure of a driveway on a different part of its Property. That the driveway closure and

---

[6] Wisconsin Stat. § 32.06(5) provides a means for property owners to challenge the government's right to take property under § 32.06, which sets out the condemnation procedures for non-transportation-related takings. The relevant language in § 32.06(5) is nearly identical to § 32.05(5).

the taking of the CTH H parcel may be part of a larger project to improve STH 50 does not "merge each project into one single compensable act."  See 118th St. Kenosha, LLC, 359 Wis. 2d 30, ¶33.  Consequently, DEKK may not pursue damages for the driveway closure under § 32.05(5).

¶23  Because we decide the case on this narrow ground, we need not decide whether DEKK might recover damages for the driveway closure through a different procedural avenue.  See Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.  ("Typically, an appellate court should decide cases on the narrowest possible grounds.  Issues that are not dispositive need not be addressed." (citation omitted)).

## IV.  CONCLUSION

¶24  DEKK may not recover damages for the closure of the STH 50 driveway under Wis. Stat. § 32.05(5) because the access rights that DEKK alleges it lost were distinct from the taking described in DOT's jurisdictional offer.  Summary judgment should therefore be granted in DOT's favor.

*By the Court.*—The decision of the court of appeals is modified, and as modified, affirmed.

¶25 REBECCA GRASSL BRADLEY, J. *(concurring).*

> To empower government excessively is to endanger the
> very rights government is constituted to secure.

Peter C. Myers, From Natural Rights to Human Rights——And Beyond 33 (2017).

¶26 The majority properly resolves this case on limited procedural grounds; I agree that DEKK's claim for compensation cannot be brought under Wis. Stat. § 32.05(5). Instead of limiting its analysis to what it properly characterizes as a dispositive procedural issue, the majority nevertheless makes unnecessary, overly broad, and inaccurate statements about the availability of compensation to property owners stemming from the exercise of the state's police power. I write separately because the majority opinion could be misconstrued to undermine constitutionally protected private property rights; I therefore do not join it.

¶27 The Takings Clause of the Fifth Amendment prohibits private property from being taken for public use without just compensation. U.S. Const. amend. V. The Wisconsin Constitution similarly provides that "[t]he property of no person shall be taken for public use without just compensation therefor." Wis. Const. art. I, § 13. The majority jumps from reciting the constitutional limits on the power of the government to take private property, to asserting that "[i]njuries to property that result from a valid exercise of the state's police power are generally not compensable." Majority op., ¶13. Exceptions and caveats abound but go unmentioned by the majority, leaving the mistaken impression that the government may injure property and

1

deny compensation to the affected property owner merely by invoking its police power. Of course this is not true and never has been since the people established the government in order to secure the people's rights:

> We assume that one of the uses of the convenient phrase "police power" is to justify those small diminutions of property rights which, although within the letter of constitutional protection, are necessarily incident to the free play of the machinery of government. It may be that the extent to which such diminutions are lawful without compensation is larger when the harm is inflicted only as incident to some general requirement of public welfare. But, whether the last-mentioned element enters into the problem or not, the question is one of degree, and <u>sooner or later we reach the point at which the constitution applies and forbids physical appropriation and legal restrictions alike, unless they are paid for</u>.

Bent v. Emery, 173 Mass. 495, 496, 53 N.E. 910 (1899) (emphasis added).

¶28 In this case, we need not determine whether the Department of Transportation (DOT) exercised its police power "to justify . . . small diminutions of property rights" or instead reached the point of physically appropriating private property or so restricting it as to trigger the constitutional command for compensation to the property owner. Chapters 32 and 86 of the Wisconsin Statutes outline various procedural avenues for property owners to challenge the government's deprivation of an asserted right of access and to seek compensation. In this case, DEKK seeks compensation for DOT's alleged elimination of a deeded right of access to STH 50. As the majority explains,

2

Wis. Stat. § 32.05 is not the proper statute for seeking just compensation.

¶29 The majority confuses the dispositive procedural issue, ostensibly rejecting DEKK's claim because "DOT's jurisdictional offer to DEKK did not describe any removal of access to STH 50." Majority op., ¶1. The majority's framing of its holding suggests DOT could avoid paying just compensation by simply omitting the removal of access to STH 50 from its jurisdictional offer. Of course the law would not countenance such gamesmanship. The court rejects DEKK's just compensation claim against DOT because DEKK brought that claim under Wis. Stat. § 32.05, which governs takings challenges initiated "for any reason other than that the amount of compensation offered is inadequate." Wis. Stat. § 32.05(5) (emphasis added). DEKK purported in its complaint to seek only a "declaration that DOT has no power or right under the police power to remove DEKK's access rights to STH 50[.]" As litigation proceeded, DEKK altered its posture. During the hearing on the parties' motions for summary judgment, DEKK seemingly conceded DOT may possess the power to remove its northern driveway and requested compensation:

> What we are looking for here is not an order blocking the Department from closing the driveway. We are only asking for summary [judgment] which says, if the Department must close this driveway and can establish that they need to do so for public safety reasons, they can only do so by the payment of just compensation.

¶30 Before this court, DEKK again frames the issue in terms of compensation: "Can DOT remove a 'right of access,'

3

contained in a recorded deed made in an eminent domain procedure, under the guise of an exercise of the police power, without prior due process proceedings and without just compensation?" A claim for just compensation cannot be litigated under Wis. Stat. § 32.05, which prescribes procedural rules the State must follow before condemning property. Crown Zellerbach Corp. v. Dep't of City Dev. Of City of Milwaukee, 47 Wis. 2d 142, 148, 177 N.W.2d 94 (1970). Establishing, among other things, rules regarding due notice, actions to contest, and acceptance of offers, this statute prescribes no criteria or procedure for determining whether an offered award reflects the fair value of a condemned property. See generally Wis. Stat. § 32.05. Those rules are located in Wis. Stat. § 32.09, entitled "Rules governing determination of just compensation." Pursuant to this statute, courts must adhere to procedures adapted to accurately ascertain the value of property loss due to condemnation. Backus v. Waukesha Cnty., 2022 WI 55, ¶22, 402 Wis. 2d 764, 976 N.W.2d 492 (Rebecca Grassl Bradley, J., concurring). Section 32.09(8), for example, empowers the court to require both the condemnor and the owner to "submit . . . a statement covering the respective contentions" on a host of factors affecting the value of a property.[1] Section 32.09

---

[1] Those factors include:

    (a) Highest and best use of the property.

    (b) Applicable zoning.

(continued)

4

procedures also ensure property owners receive the highest award to which they are entitled. Wis. Stat. § 32.09(2) (requiring just compensation be determined "on the basis of [the property's] most advantageous use but only such use as actually affects the present market value."). Property owners seeking compensation for condemned property must bring their claims under § 32.09.

¶31 The court's disposition of DEKK's claim is narrowly decided on procedural grounds. The majority opinion unnecessarily makes broad statements about the government's authority to exercise its police power without compensation to adversely affected property owners. This is a complex area of

---

    (c)  Designation of claimed comparable lands, sale of which will be used in appraisal opinion evidence.

    (d)  Severance damage, if any.

    (e)  Maps and pictures to be used.

    (f)  Costs of reproduction less depreciation and rate of depreciation used.

    (g)  Statements of capitalization of income where used as a factor in valuation, with supporting data.

    (h)  Separate opinion as to fair market value, including before and after value where applicable by not to exceed 3 appraisers.

    (i)  A recitation of all damages claimed by owner.

    (j)  Qualifications and experience of witnesses offered as experts.

Wis. Stat. § 32.09(8)(a)-(j).

the law. Generalized statements without proper attention to legal nuances may inadvertently have profound implications for private property owners. Because the majority should have more carefully circumscribed its pronouncements, I respectfully concur but do not join the majority opinion.